IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTRILOCK, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-520 (MN) |
| | ) |
| CARRIER FIRE & SECURITY | ) |
| AMERICAS LLC, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM ORDER</u>**

At Wilmington this 8th day of July 2024:

As announced at the hearing on May 23, 2024, IT IS HEREBY ORDERED that the disputed claim terms of U.S. Patent No. 7,949,541 ("the '541 Patent") are construed as follows:

1. "a device for storing at least one key proximate a vehicle, maintaining security, and gathering data for a vehicle" is limiting as to "device" and "vehicle" but not as to the remaining elements of the preamble ('541 Patent, claim 1)

2. "the identification tag being attached to and associated with the at least one key or conductive container" does not require construction[1] ('541 Patent, claims 1, 4-6, 9, 11, 13, 15, 17-22)

3. "the information relating to an individual accessing the at least one key" does not require construction[2] ('541 Patent, claim 17)

---

[1] During the hearing, it became apparent that any disagreement as to the meaning of this term was not a dispute over the scope of the claims. (D.I. 210 at 40:5-49:18). Resolution of the parties' disagreement would have no impact on any issue of infringement, validity or damages (or anything else). (*Id.* at 55:12-58:3). As such, the Court found construction of the term unnecessary, and the parties ultimately agreed. (*Id.* at 56:1-57:24).

[2] The only dispute over the meaning of the "information relating to an individual" and "reference information" terms was whether the terms were indefinite. That is, Plaintiff proposed no construction necessary and Defendant argued the terms were indefinite. The Court found that indefiniteness had not been proven at this stage, leaving no further claim construction dispute for these terms.

      4.      "reference information relating to the event information" does not require construction ('541 Patent, claims 18-22)

The parties briefed the issues (*see* D.I. 195) and submitted an appendix containing intrinsic evidence (D.I. 196). Neither side provided a tutorial describing the relevant technology. The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument (D.I. 210) and applied the following legal standards in reaching its decision:

## I.    LEGAL STANDARDS

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325-27 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (cleaned up). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of

the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period."  *Teva*, 574 U.S. at 331. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.  Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.  Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer

from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

I.  **THE COURT'S RULING**

The Court's ruling regarding the disputed claim terms of the '541 Patent was announced from the bench at the conclusion of the hearing as follows:

> At issue, there are four disputed terms in one patent, U.S. Patent No. 7,949,541. Two of the disputes as briefed initially were about the meaning of claim terms and two were about indefiniteness. During the hearing it became clear that one of the disputes was not really necessary to be decided, that was one of the claim construction disputes. So I am prepared to rule on the remaining dispute and will defer ruling on the definiteness issues until another time.
>
> I will not be issuing a written opinion, but I will be issuing an order stating my ruling. I want to emphasize before I announce my decisions that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. I have reviewed the patent and all the evidence submitted by the parties. There was full briefing on each of the disputed terms and we had argument today. All of that has been carefully considered.
>
> As to my rulings, I am not going to read into the record my understanding of claim construction law and indefiniteness. I have a legal standard section that I have included in earlier opinions, including somewhat recently in *REX Computing, Inc. v. Cerebras Systems, Inc.*, Civil Action No. 21-525 (MN). I incorporate that law and adopt it into my ruling today and will also set it out in the order that I issue.
>
> The first dispute is whether the preamble of claim 1 of the '541 Patent is limiting. Plaintiff initially argued that the preamble is not limiting and that, even if limiting, no construction is

necessary. Defendant argues that the preamble is limiting as a whole and should be construed to mean "a device that stores a key at a vehicle's location, maintains security, and gathers data for the vehicle" which does not really seem to be a construction so much as a slight wordsmithing of the preamble's language. After the court-ordered meet and confer, Plaintiff agreed to Defendant's proposed construction should the Court find the preamble limiting in its entirely. But Plaintiff nevertheless maintains that the preamble is not a limitation.

Plaintiff argues that the preamble simply states the purpose or intended use of the claimed invention and that the claim recites a complete invention without the preamble. Defendant, on the other hand, argues that the preamble is "essential for understanding the additional limitations in the body of the claim" and the rest of the claims.[3] In particular, Defendant argues that the preamble provides antecedent bases for "the vehicle" and "the device" – two terms that appear in the body of claim 1, as well as in various dependent claims.[4] Defendant argues that not only does the preamble introduce those terms, but it also details the relationship between them.[5] According to Defendant, that relationship requires the device to be mounted to the specific vehicle for which security is maintained and information is gathered.[6] Ultimately, I agree with Defendant in-part.

Although preambles generally do not limit claims, the Federal Circuit has indicated that a preamble may serve as a claim limitation in certain instances, such as when the preamble "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim."[7] For example, the preamble may be a limitation when it provides the antecedent basis for terms that appear in the body of the claim.[8] Where the preamble merely indicates an invention's purpose or intended use, however, the preamble does not

---

[3] (D.I. 195 at 10-11).

[4] (*See, e.g.*, '541 Patent at claim 2 ("integral to the device") & claim 4 ("input into the device")).

[5] (D.I. 195 at 12).

[6] (*Id.*).

[7] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

[8] *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

5

limit the scope of the claims.[9] If merely giving "a descriptive name to the set of limitations in the body of the claim that completely set forth the invention," then a preamble is not a separate claim limitation.[10]

Here, the crux of the issue is really whether the preamble must be read as a limitation so as to give antecedent bases to a "device" and "vehicle." Although I think it's a close call, ultimately Defendant is correct that a person of ordinary skill would understand the preamble as to the term device is a claim limitation because it does provide antecedent basis and context to that term used in the body of the claim. The first limitation after the preamble presents two different "device" terms referring to mounting that would be circular and confusing without the preamble providing antecedent basis.

As to the remaining language involving "storing," "maintaining security" and "gathering data for the vehicle" concepts, those appear to be statements of intended purpose, and I think they are not limiting under the relevant Federal Circuit law as I understand it.[11]

The second term is "the identification tag being attached to and associated with the at least one key or the conductive container" from claims 1, 4 through 6, 9, 11, 13, 15 and 17 through 22 of the '541 Patent. During the hearing, the parties agreed that there is no disagreement in claim scope that is actually relevant to this case. Specifically, the claim construction dispute in the briefing was whether the ID tag can be attached to either the key or the container and then associated with the other (e.g., attached to the container and associated with the key).

And although the parties may actually dispute what that language means, it appears that no argument in this case that would be presented to the jury regarding validity, infringement, damages, or anything else involves that issue.

The final infringement contentions in this case assert that in Defendant's devices the ID tag is both attached to and associated

---

[9] *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

[10] *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434-35 (Fed. Cir. 2000).

[11] *See, e.g.*, *Bicon*, 441 F.3d at 952; *IMS Tech.*, 206 F.3d at 1434; *see also TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015).

with the same thing, the container. Defendant asserts that the ID tag is not. That is an issue of fact for the jury.

So, there may be a difference in opinion as to the words of the claim, but I still decline to construe the term at this point given that there is no dispute of claim scope that is relevant to any of the issues in this case.

The next two claim terms are "the information relating to an individual accessing the at least one key" from claim 17 and "reference information relating to the event information" from claims 18 through 22.

The only dispute between the parties on both [of these terms] is whether the term is indefinite. That is, Plaintiff argues that no construction is necessary, and Defendant argues that the terms are indefinite, relying solely on attorney argument. A finding of indefiniteness requires clear and convincing evidence, which I do not believe exists on the present record. Thus, I decline to reach the merits of Defendant's indefiniteness arguments at this time and Defendant may raise the issue again in connection with summary judgment to the extent it wishes to continue pursuing indefiniteness.

Deferring the decision also makes sense given that the terms at issue are not in all of the asserted claims, and the parties will narrow the claims as they move towards trial.

So those are my constructions to the extent that I have construed and my rulings to the extent that I have not on the terms.

_____
The Honorable Maryellen Noreika
United States District Judge